Contract of Sale for New York office, commercial and multi-family residential premises

## **Contract of Sale---Office, Commercial and Multi-Family Residential Premises**

### Table of Contents

Schedule A. Description of premises (to be attached)
Schedule B. Permitted exceptions
Schedule C. Purchase price
Schedule D. Miscellaneous
Schedule E. Rent schedule (to be attached)
Section 1. Sale of premises and acceptable title
Section 2. Purchase price, acceptable funds, existing
    mortgages, purchase money mortgage and
    escrow of downpayment
Section 3. The closing
Section 4. Representations and warranties of seller
Section 5. Acknowledgments of purchaser
Section 6. Seller's obligations as to leases
Section 7. Responsibility for violations

Section 8. Destruction, damage or condemnation
Section 9. Covenants of seller
Section 10. Seller's closing obligations
Section 11. Purchaser's closing obligations
Section 12. Apportionments
Section 13. Objections to title, failure of seller or
    purchaser to perform and
Section 14. Broker
Section 15. Notices
Section 16. Limitations on survival of representations,
    warranties, covenants and other
    obligations
Section 17. Miscellaneous provisions
Signatures and receipt by escrowee

CONTRACT dated the *24*, day of February, 2018,

Between
**733 PROSPECT REALTY SERVICE CORP.**

Address:
733 Prospect Avenue Bronx New York 10455
("Seller") and

**URI MERMELSTEIN**

Address:
18 E. 48th Street New York New York 10017


("Purchaser").



Seller and Purchaser hereby covenant and agree as follows:

### Schedule A
### DESCRIPTION OF PREMISES

The Premises are located at or known as:
Street Address: 733 Prospect Avenue
City: Bronx    State: New York  Zip: 10455
Tax Map Designation:  Section:      Block: 02675    Lot: 0051


(☒ metes and bounds description attached hereto)

### Schedule B
### PERMITTED EXCEPTIONS

    1. Zoning regulations and ordinances which are not violated by the existing structures or present use thereof and which do not render title uninsurable.
    2. Consents by the Seller or any former owner of the Premises for the erection of any structure or structures on, under or above any street or streets on which the Premises may abut.
    3. The Existing Mortgage(s) and financing statements, assignments of leases and other collateral assignments ancillary thereto.
    4. Leases and Tenancies specified in the Rent Schedule and any new leases or tenancies not prohibited by this contract.
    5. Unpaid installments of assessments not due and payable on or before the Closing Date.
    6. Financing statements, chattel mortgages and liens on personalty filed more than 5 years prior to the Closing Date and not renewed, or filed against property or equipment no longer located on the Premises or owned by Tenants.
    7.    (a)    Rights of utility companies to lay, maintain install and repair pipes, lines, poles, conduits, cable boxes and related equipment on, over and under the Premises, provided that none of such rights imposes any monetary obligation on the owner of the Premises.
    (b) Encroachments of stoops, areas, cellar steps, trim cornices, lintels, window sills, awnings, canopies, ledges, fences, hedges, coping and retaining walls projecting from the Premises over any street or highway or over any adjoining property and encroachments of similar elements projecting from adjoining property over the Premises.
    (c) Revocability or lack of right to maintain vaults, coal chutes, excavations or sub-surface equipment beyond the line of the Premises.
    (d) Any state of facts that an accurate survey would disclose, provided that such facts do not render title unmarketable. For the purposes of this contract, none of the facts shown on the survey, if any, identified below shall be deemed to render title unmarketable, and Purchaser shall accept title subject thereto:

## Schedule C
### PURCHASE PRICE

The Purchase Price shall be paid as follows:

| | | |
|---|---|---|
| (a) | By check subject to collection, the receipt of which is hereby acknowledged by Seller: | $240,000.00 |
| (b) | By check or checks delivered to Seller at the Closing in accordance with the provisions of §2.02: | $2,160,000.00 |
| (c) | By acceptance of title subject to the following Existing Mortgage(s): | $ |
| (d) | By execution and delivery to Seller by Purchaser or its assignee of a note secured by a Purchase Money Mortgage on the Premises, in the sum of $          payable as follows: | |

Interest Rate:          Term:          Monthly payment:          Prep. Fee:          Other provisions:          $

Making for a total Purchase Price of:          $2,400,000.00

## Schedule D
### MISCELLANEOUS

1. Title insurer designated by the parties (§1.02):

2. Last date for consent by Existing Mortgagee(s) (§2.03(b)):

3. Maximum Interest Rate of any Refinanced Mortgage (§2.04(b)):

4. Prepayment Date on or after which Purchase Money Mortgage may be prepaid (§2.04(c)):

5. Seller's tax ID Nos (§2.05) #1:          #2:          #3:          #4:

6. Buyer's tax ID Nos (§2.05) #1:          #2:          #3:          #4:

7. Scheduled time and date of Closing (§3.01): Date:ON OR BEFORE, 60 DAYS FROM DELIVERY OF FULLY

EXECUTED CONTRACT OF SALE Time:10:00AM o'clock.

8. Place of Closing (§3.01):MOLINA LAW, P.C. 3928 E. TREMONT AVENUE, 2ND FL., BRONX NEW YORK 10465

9. Assessed valuation of Premises (§4.10):

10. Fiscal year and annual real estate taxes on Premises (§4.10): Fiscal Year:          Annual Taxes:

11. Tax abatements or exemptions affecting Premises (§4.10):

12. Assessments on Premises (§4.13):

13. Maximum Amount which Seller must spend to cure violations, etc. (§7.02):$0.00

14. Maximum Expense of Seller to cure title defects, etc. (§13.02):$0.00

15. Broker, if any (§14.01):EXIT REALTY SEARCH (George Torres)

16. Party to pay broker's commission (§14.01):SELLER

17. Address for notices (§15.01):
    If to Seller:Orlando Molina, Esq. / MOLINA LAW, P.C.
    3928 E. Tremont Avenue, 2nd Floor, Bronx New York 10465

    with a copy to:N/A

    If to Purchaser:Anupa Lall, Esq. / ATTORNEY-AT-LAW
    146-06 Hillside Avenue, Jamaica, New York 114356

    with a copy to:N/A

18. Limitation Date for actions based on Seller's surviving representations and other obligations (§16.01):0 DAYS

19. Additional Schedules or Riders (§17.08):SEE ATTACHED

## Schedule E
### RENT SCHEDULE

(☐ if more than four tenants, check, and annex a rent schedule rider hereto; otherwise, enter information below)

| Name | Apt. No. | Rent | Due | Security |
|---|---|---|---|---|
| ...see attached. | | | | |

**Section 1. Sale of Premises and Acceptable Title**

§1.01. Seller shall sell to Purchaser, and Purchaser shall purchase from Seller, at the price and upon the terms and conditions set forth in this contract:

(a) the parcel of land more particularly described in Schedule A attached hereto ("Land"); (b) all buildings and improvement situated on the Land (collectively, "Building");

(c) all right, title and interest of Seller, if any, in and to the land lying in the bed of any street or highway in front of or adjoining the Land to the center line thereof and to any unpaid award for any taking by condemnation or any damage to the Land by reason of a change of grade of any street or highway;

(d) the appurtenances and all the estate and rights of Seller in and to the Land and Building; and

(e) all right, title and interest of Seller, if any, in and to the fixtures, equipment and other personal property attached or appurtenant to the Building (collectively, "Premises"). The Premises are located at or known as
Street Address:733 Prospect Avenue
City: Bronx State: New York Zip:10455
Tax Map Designation: Section:        Block:02675 Lot:0051

§1.02. Seller shall convey and Purchaser shall accept fee simple title to the Premises in accordance with the terms of this contract, subject only to:

(a) the matters set forth in Schedule B attached hereto (collectively, "Permitted Exceptions"); and

(b) such other matters as (i) the title insurer specified in Schedule D attached hereto (or if none is so specified, then any member of the New York Board of Title Underwriters) shall be willing, without special premium, to omit as exceptions to coverage or to except with insurance against collection out of or enforcement against the Premises and (ii) shall be accepted by any lender described in Section 274-a of the Real Property Law ("Institutional Lender") which has committed in writing to provide mortgage financing to Purchaser for the purchase of the Premises ("Purchaser's Institutional Lender"), except that if such acceptance by Purchaser's Institutional Lender is unreasonably withheld or delayed, such acceptance shall be deemed to have been given.

**Section 2. Purchase Price, Acceptable Funds, Existing Mortgages, Purchase Money Mortgage and Escrow of Down payment**

§2.01. The purchase price ("Purchase Price") to be paid by Purchaser to Seller for the Premises as provided in Schedule C attached hereto is $2,400,000.00

§2.02. All monies payable under this contract, unless otherwise specified in this contract, shall be paid by:
(a) certified checks of Purchaser or any person making a purchase money loan to Purchaser drawn on any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York or

(b) official bank checks drawn by any such banking institution, payable to the order of Seller, except that uncertified checks of Purchaser payable to the order of Seller up to the amount of one-half of one percent of the Purchase Price shall be acceptable for sums payable to Seller at the Closing.

§2.03. (a) If Schedule C provides for the acceptance of title by Purchaser subject to one or more existing mortgages (collectively, "Existing Mortgage(s)"), the amounts specified in Schedule C with reference thereto may be approximate. If at the Closing the aggregate principal amount of the Existing Mortgage(s), as reduced by payments required there under

prior to the Closing, is less than the aggregate amount of the Existing Mortgage(s) as specified in Schedule C, the difference shall be added to the monies payable at the Closing, unless otherwise expressly provided herein.

(b) If any of the documents constituting the Existing Mortgage(s) or the note(s) secured thereby prohibits or restricts the conveyance of the Premises or any part thereof without the prior consent of the holder or holders thereof ("Mortgagee(s)") or confers upon the Mortgagee(s) the right to accelerate payment of the indebtedness in the event that a conveyance is made without consent of the Mortgagee(s), Seller shall notify such Mortgagee(s) of the proposed conveyance to Purchaser within 10 days after execution and delivery of this contact, requesting the consent of such Mortgagee(s) thereto. Seller and Purchaser shall furnish the Mortgagee(s) with such information as may reasonably be required in connection with such request and shall otherwise cooperate with such Mortgagee(s) and with each other in an effort expeditiously to procure such consent, but neither shall be obligated to make any payment to obtain such consent. If such Mortgagee(s) shall fail or refuse to grant such consent in writing on or before the date set forth in Schedule D or shall require as a condition of the granting of such consent

(i) that additional consideration be paid to the Mortgagee(s) and neither Seller nor Purchaser is willing to pay such additional consideration or

(ii) that the terms of the Existing Mortgage(s) be changed and Purchaser is unwilling to accept such change, then unless Seller and Purchaser mutually agree to extend such date or otherwise modify the terms of this contract, Purchaser may terminate this contract in the manner provided in §13.02.

If Schedule C provides for a Purchase Money Mortgage (as defined in §2.04), Seller may also terminate this contract in the manner provided in §13.02 if any of the foregoing circumstances occur or if Seller is unwilling to accept any such change in the terms of the Existing Mortgage(s).

§2.04. (a) If Schedule C provides for payment of a portion of the Purchase Price by execution and delivery to Seller of a note secured by a purchase money mortgage ("Purchase Money Mortgage"), such note and Purchase Money Mortgage shall be drawn by the attorney for the Seller on the standard forms of the New York Board of Title Underwriters then in effect for notes and for mortgages of like lien, as modified by this contract. At the Closing, Purchaser shall pay the mortgage recording tax and recording fees therefore and the filing fees for any financing statements delivered in connection therewith.

(b) If Schedule C provides for the acceptance of title by Purchaser subject to Existing Mortgage(s) prior in lien to the Purchase Money Mortgage, the Purchase Money Mortgage shall provide that it is subject and subordinate to the lien(s) of the Existing Mortgage(s) and shall be subject and subordinate to any extensions, modifications, renewals, consolidations, substitutions or replacements thereof (collectively, "Refinancing" or "Refinanced Mortgage"), provided that (i) the rate of interest payable under a Refinanced Mortgage shall not be greater than that specified in Schedule D as the Maximum Interest Rate or, if no Maximum Interest Rate is specified in Schedule D, shall not be greater than the rate of interest that was payable on the refinanced indebtedness immediately prior to such Refinancing, and (ii)   if the principal amount of the Refinanced Mortgage plus the principal amount of other Existing Mortgage(s), if any, remaining after placement of a Refinanced Mortgage exceeds the amount of principal owing and unpaid on all mortgages on the Premises superior to the Purchase Money Mortgage immediately prior to the Refinancing, an amount equal to the excess shall be paid at the closing of the Refinancing to the

*/ receipt*

holder of the Purchase Money Mortgage in reduction of principal payments due there under in inverse order of maturity. The Purchase Money Mortgage shall further provide that the holder thereof shall, on demand and without charge therefore, execute, acknowledge and deliver any agreement or agreements reasonably required by the mortgagor to confirm such subordination.

(c) The Purchase Money Mortgage shall contain the following additional provisions:

(i) "The mortgagor or any owner of the mortgaged premises shall have the right to prepay the entire unpaid indebtedness together with accrued interest, but without penalty, at any time on or after [insert the day following the last day of the fiscal year of the mortgagee in which the Closing occurs or, if a Prepayment Date is specified in Schedule D, the specified Prepayment Date], or not less than 10 days' written notice to the holder hereof."

(ii) "Notwithstanding anything to the contrary contained herein, the obligation of the mortgagor for the payment of the indebtedness and for the performance of the terms, covenants and conditions contained herein and in the note secured hereby is limited solely to recourse against the property secured by this mortgage, and in no event shall the mortgagor or any principal of the mortgagor, disclosed or undisclosed, be personally liable for any breach of or default under the note or this mortgage or for any deficiency resulting from or through any proceedings to foreclose this mortgage, nor shall any deficiency judgment, money judgment or other personal judgment be sought or entered against the mortgagor or any principal of the mortgagor, disclosed or undisclosed, but the foregoing shall not adversely affect the lien of this mortgage or the mortgagee's right of foreclosure."

(iii) "In addition to performing its obligations under Section 274-a of the Real Property Law, the mortgagee, if other than one of the institutions listed in Section 274-a agrees that, within 10 days after written request by the mortgagee, but not more than twice during any period of 12 consecutive months, it will execute, acknowledge and deliver without charge a certificate of reduction in recordable form (a) certifying as to (1) the then unpaid principal balance of the indebtedness secured hereby, (2) the maturity date thereof, (3) the rate of interest, (4) the last date to which interest has been paid and (5) the amount of any escrow deposits then held by the mortgagee, and (b) stating, to the knowledge of the mortgagee, whether there are any alleged defaults hereunder and, if so, specifying the nature thereof."

(iv) "All notices required or desired to be given under this mortgage shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed to the mortgagor and mortgagee at the addresses specified in this mortgage or to such other parties or at such other addresses, not exceeding two, as may be designated by a notice given to the other party or parties in accordance with the provisions hereof."

(v) The additional provisions, if any, specified in a rider hereto.

§2.05. (a) If the sum paid under paragraph (a) of Schedule C or any other sums paid on account of the Purchase Price prior to the Closing (collectively, "Downpayment") are paid by check or checks drawn to the order of and delivered to Seller's attorney or another escrow agent ("Escrowee"), the Escrowee shall hold the proceeds thereof in escrow in a special bank account (or as otherwise agreed in writing by Seller, Purchaser and Escrowee) until the Closing or sooner termination of this contract and shall pay over or apply such proceeds in accordance with the terms of this section. Escrowee need not hold such proceeds in an interest-bearing account, but if any interest is earned thereon, such interest shall be paid to the same party entitled to the escrowed proceeds, and the party receiving such interest shall pay any income taxes thereon. The tax identification numbers of the parties are either set forth in Schedule D or shall be furnished to Escrowee upon request. At the Closing, such proceeds and the interest thereon, if any, shall be paid by Escrowee to Seller. If for any reason the Closing does not occur and either party makes a written demand upon Escrowee for payment of such amount, Escrowee shall give written notice to the other party of such demand. If Escrowee does not receive a written

objection from the other party to the proposed payment within 10 business days after the giving of such notice, Escrowee is hereby authorized to make such payment. If Escrowee does receive such written objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by written instructions from the parties to this contract or a final judgment of a court. However, Escrowee shall have the right at any time to deposit the escrowed proceeds and interest thereon, if any, with the clerk of the Supreme Court of the county in which the Land is located. Escrowee shall give written notice of such deposit to Seller and Purchaser. Upon such deposit Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

(b) The parties acknowledge that Escrowee is acting solely as a stakeholder at their request and for their convenience, that Escrowee shall not be deemed to be the agent of either of the parties, and that Escrowee shall not be liable to either of the parties for any act or omission on its part unless taken or suffered in bad faith, in willful disregard of this contract or involving gross negligence. Seller and Purchaser shall jointly and severally indemnify and hold Escrowee harmless from and against all costs, claims and expenses, including reasonable attorneys' fees, incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith, in willful disregard of this contract or involving gross negligence on the part of Escrowee.

(c) Escrowee has acknowledged agreement to these provisions by signing in the place indicated on the signature page of this contract.

Section 3. The Closing

§3.01. Except as otherwise provided in this contract, the closing of title pursuant to this contract ("Closing") shall take place on the scheduled date and time of closing specified in Schedule D (the actual date of the Closing being herein referred to as "Closing Date") at the place specified in Schedule D.

Section 4. Representations and Warranties of Seller

Seller represents and warrants to Purchaser as follows:

§4.01. Unless otherwise provided in this contract, Seller is the sole owner of the Premises.

§4.02. If the Premises are encumbered by an Existing Mortgage(s), no written notice has been received from the Mortgagee(s) asserting that a default or breach exists thereunder which remains uncured and no such notice shall have been received and remain uncured on the Closing Date. If copies of documents constituting the Existing Mortgage(s) and note(s) secured thereby have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals and the Existing Mortgage(s) and note(s) secured thereby have not been modified or amended except as shown in such documents.

§4.03. The information concerning written leases (which together with all amendments and modifications thereof are collectively referred to as "Leases") and any tenancies in the Premises not arising out of the Leases (collectively, "Tenancies") set forth in Schedule E attached hereto ("Rent Schedule") is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and there are no Leases or Tenancies of any space in the Premises other than those set forth therein and any subleases or subtenancies. Except as otherwise set forth in the Rent Schedule or elsewhere in this contract:

(a) all of the Leases are in full force and effect and none of them has been modified, amended or extended;

(b) no renewal or extension options have been granted to tenants;

(c) no tenant has an option to purchase the Premises;

(d) the rents set forth are being collected on a current basis and there are no arrearages in excess of one month;

(e) no tenant is entitled to rental concessions or abatements for any period subsequent to the scheduled date of closing;

(f) Seller has not sent written notice to any tenant claiming that such tenant is in default, which default remains uncured;

(g) no action or proceeding instituted against Seller by any tenant of the Premises is presently pending in any court, except with respect to claims involving personal injury or property damage which are covered by insurance; and

(h) there are no security deposits other than those set forth in the Rent Schedule.

If any Leases which have been exhibited to and initialed by Purchaser or its representative contain provisions that are inconsistent with the foregoing representations and warranties, such representations and warranties shall be deemed modified to the extent necessary to eliminate such inconsistency and to conform such representations and warranties to the provisions of the Leases.

§4.04. If the Premises or any part thereof are subject to the New York City Rent Stabilization Law, Seller is and on the Closing Date will be a member in good standing of the Real Estate Industry Stabilization Association, and, except as otherwise set forth in the Rent Schedule, there are no proceedings with any tenant presently pending before the Conciliation and Appeals Board in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the Conciliation and Appeals Board that have not been complied with by Seller.

§4.05. If the Premises or any part thereof are subject to the New York City Emergency Rent and Rehabilitation Law, the rents shown are not in excess of the maximum collectible rents, and, except as otherwise set forth in the Rent Schedule, no tenants are entitled to abatements as senior citizens, there are no proceedings presently pending before the rent commission in which a tenant has alleged an overcharge of rent or diminution of services or similar grievance, and there are no outstanding orders of the rent commission that have not been complied with by Seller.

§4.06. If an insurance schedule is attached hereto, such schedule lists all insurance policies presently affording coverage with respect to the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.07. If a payroll schedule is attached hereto, such schedule lists all employees presently employed at the Premises, and the information contained therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof, and, except as otherwise set forth in such schedule, none of such employees is covered by a union contract and there are no retroactive increases or other accrued and unpaid sums owed to any employee.

§4.08. If a schedule of service, maintenance, supply and management contracts ("Service Contracts") is attached hereto, such schedule lists all such contracts affecting the Premises, and the information set forth therein is accurate as of the date set forth therein or, if no date is set forth therein, as of the date hereof.

§4.09. If a copy of a certificate of occupancy for the Premises has been exhibited to and initialed by Purchaser or its representative, such copy is a true copy of the original and such certificate has not been amended, but Seller makes no representation as to compliance with any such certificate.

§4.10. The assessed valuation and real estate taxes set forth in Schedule D, if any, are the assessed valuation of the Premises and the taxes paid or payable with respect thereto for the fiscal year indicated in such schedule. Except as otherwise

set forth in Schedule D, there are no tax abatements or exemptions affecting the Premises.

§4.11. Except as otherwise set forth in a schedule attached hereto, if any, if the Premises are used for residential purposes, each apartment contains a range and a refrigerator, and all of the ranges and refrigerators and all of the items of personal property (or replacements thereof) listed in such schedule, if any, are and on the Closing Date will be owned by

Seller free of liens and encumbrances other than the lien(s) of the Existing Mortgage(s), if any.

§4.12. Seller has no actual knowledge that any incinerator, boiler or other burning equipment on the Premises is being operated in violation of applicable law. If copies of a certificate or certificates of operation therefor have been exhibited to and initialed by Purchaser or its representative, such copies are true copies of the originals.

§4.13. Except as otherwise set forth in Schedule D, Seller has no actual knowledge of any assessment payable in annual installments, or any part thereof, which has become a lien on the Premises.

### Section 5. Acknowledgments of Purchaser
Purchaser acknowledges that:

§5.01. Purchaser has inspected the Premises, is fully familiar with the physical condition and state of repair thereof, and, subject to the provisions of §7.01, §8.01, and §9.04, shall accept the Premises "as is" and in their present condition, subject to reasonable use, wear, tear and natural deterioration between now and the Closing Date, without any reduction in the Purchase Price for any change in such condition by reason thereof subsequent to the date of this contract.

§5.02. Before entering into this contract, Purchaser has made such examination of the Premises, the operation, income and expenses thereof and all other matters affecting or relating to this transaction as Purchaser deemed necessary. In entering into this contract, Purchaser has not been induced by and has not relied upon any representations, warranties or statements, whether express or implied, made by Seller or any agent, employee or other representative of Seller or by any broker or any other person representing or purporting to represent Seller, which are not expressly set forth in this contract, whether or not any such representations, warranties or statements were made in writing or orally.

### Section 6. Seller's Obligations as to Leases

§6.01. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not, without Purchaser's prior written consent, which consent shall not be unreasonably withheld:

(a) amend, renew or extend any Lease in any respect, unless required by law;

(b) grant a written lease to any tenant occupying space pursuant to a Tenancy; or

(c) terminate any Lease or Tenancy except by reason of a default by the tenant thereunder.

§6.02. Unless otherwise provided in a schedule attached to this contract, between the date of this contract and the Closing, Seller shall not permit occupancy of, or enter into any new lease for, space in the Building which is presently vacant or which may hereafter become vacant without first giving Purchaser written notice of the identity of the proposed tenant, together with

(a) either a copy of the proposed lease or a summary of the terms thereof in reasonable detail and

(b) a statement of the amount of the brokerage commission, if any, payable in connection therewith and the terms of payment thereof. If Purchaser objects to such proposed lease, Purchaser shall so notify Seller within 4 business days after receipt of Seller's notice if such notice was personally delivered to Purchaser, or within 7 business days after the mailing of such notice by Seller to Purchaser, in which case Seller shall not enter into the proposed lease.

Unless otherwise provided in a schedule attached to this contract, Purchaser shall pay to Seller at the Closing, in the manner specified in §2.02, the rent and additional rent that would have been payable under the proposed lease from the date on which the tenant's obligation to pay rent would have commenced if Purchaser had not so objected until the Closing Date, less the amount of the brokerage commission specified in Seller's notice and the reasonable cost of decoration or other work required to be performed by the landlord under the terms of the proposed lease to suit the premises to the tenant's occupancy ("Reletting Expenses"), prorated in each case over the term of the proposed lease and apportioned as of the Closing Date. If Purchaser does not so notify Seller of its objection, Seller shall have the right to enter into the proposed lease with the tenant identified in Seller's notice and Purchaser shall pay to Seller, in the manner specified in §2.02, the Reletting Expenses, prorated in each case over the term of the lease and apportioned as of the later of the Closing Date or the rent commencement date. Such payment shall be made by Purchaser to Seller at the Closing. In no event shall the amount so payable to Seller exceed the sums actually paid by Seller on account thereof.

§6.03. If any space is vacant on the Closing Date, Purchaser shall accept the Premises subject to such vacancy, provided that the vacancy was not permitted or created by Seller in violation of any restrictions contained in this contract. Seller shall not grant any concessions or rent abatements for any period following the Closing without Purchaser's prior written consent. Seller shall not apply all or any part of the security deposit of any tenant unless such tenant has vacated the Premises.

§6.04. Seller does not warrant that any particular Lease or Tenancy will be in force or effect at the Closing or that the tenants will have performed their obligations thereunder. The termination of any Lease or Tenancy prior to the Closing by reason of the tenant's default shall not affect the obligations of Purchaser under this contract in any manner or entitle Purchaser to an abatement of or credit against the Purchaser Price or give rise to any other claim on the part of Purchaser.

**Section 7. Responsibility for Violations**

§7.01. Except as provided in §7.02 and §7.03, all notes or notices of violations of law or governmental ordinances, orders or requirements which were noted or issued prior to the date of this contract by any governmental department, agency or bureau having jurisdiction as to conditions affecting the Premises and all liens which have attached to the Premises prior to the Closing pursuant to the Administrative Code of the City of New York, if applicable, shall be removed or complied with by Seller. If such removal or compliance has not been completed prior to the Closing, Seller shall pay to Purchaser at the Closing the reasonably estimated unpaid cost to effect or complete such removal or compliance, and Purchaser shall be required to accept title to the Premises subject thereto, except that Purchaser shall not be required to accept such title and may terminate this contract as provided in §13.02 if
(a) Purchaser's Institutional Lender reasonably refuses to provide financing by reason thereof or
(b) the Building is a multiple dwelling and either
(i) such violation is rent impairing and causes rent to be unrecoverable under Section 302-a of the Multiple Dwelling Law or
(ii) a proceeding has been validly commenced by tenants and is pending with respect to such violation for a judgment directing deposit and use of rents under Article 7-A of the Real Property Actions and Proceedings Law. All such notes or notices of violations noted or issued on or after the date of this contract shall be the sole responsibility of Purchaser.

§7.02. If the reasonably estimated aggregate cost to remove or comply with any violations or liens which Seller is required to remove or comply with pursuant to the provisions of §7.01 shall exceed the Maximum Amount specified in Schedule D (or if none is so specified, the Maximum Amount shall be one-half of one percent of the Purchase Price), Seller

shall have the right to cancel this contract, in which event the sole liability of Seller shall be as set forth in §13.02, unless Purchaser elects to accept title to the Premises subject to all such violations or liens, in which event Purchaser shall be entitled to a credit of an amount equal to the Maximum Amount against the monies payable at the Closing.

§7.03. Regardless of whether a violation has been noted or issued prior to the date of this contract, Seller's failure to remove or fully comply with the following violations shall not be an objection to title:
(a) any violations of New York City Local Law 5 of 1973, as amended (relating to fire safety in office buildings), if applicable, or
(b) any violations which a tenant is required to remove or comply with pursuant to the terms of its lease by reason of such tenant's use or occupancy. Purchaser shall accept the Premises subject to all such violations without any liability of Seller with respect thereto or any abatement of or credit against the Purchase Price, except that if Purchaser's Institutional Lender reasonably refuses to provide financing by reason of the violations described in (b) above, Purchaser shall not be required to accept the Premises subject thereto and Purchaser shall have the right to terminate this contract in the manner provided in §13.02.

§7.04. If required, Seller, upon written request by Purchaser, shall promptly furnish to Purchaser written authorizations to make any necessary searches for the purposes of determining whether notes or notices of violations have been noted or issued with respect to the Premises or liens have attached thereto.

**Section 8. Destruction, Damage or Condemnation**

§8.01. The provisions of Section 5-1311 of the General Obligations Law shall apply to the sale and purchase provided for in this contract.

**Section 9. Covenants of Seller**

Seller covenants that between the date of this contract and the Closing:

§9.01. The Existing Mortgage(s) shall not be amended or supplemented or prepaid in whole or in part. Seller shall pay or make, as and when due and payable, all payments of principal and interest and all deposits required to be paid or made under the Existing Mortgage(s).

§9.02. Seller shall not modify or amend any Service Contract or enter into any new service contract unless same is terminable without penalty by the then owner of the Premises upon not more than 30 days notice.

§9.03. If an insurance schedule is attached hereto, Seller shall maintain in full force and effect until the Closing the insurance policies scheduled therein or renewals thereof for no more than one year of those expiring before the Closing.

§9.04. No fixtures, equipment or personal property included in this sale shall be removed from the Premises unless the same are replaced with similar items of at least equal quality prior to the Closing.

§9.05. Seller shall not withdraw, settle or otherwise compromise any protest or reduction proceeding affecting real estate taxes assessed against the Premises for any fiscal period in which the Closing is to occur or any subsequent fiscal period without the prior written consent of Purchaser, which consent shall not be unreasonably withheld. Real estate tax refunds and credits received after the Closing Date which are attributable to the fiscal tax year during which the Closing Date occurs shall be apportioned between Seller and Purchaser, after deducting the expenses of collection thereof, which obligation shall survive the Closing.

§9.06. Seller shall allow Purchaser or Purchaser's representatives access to the Premises, the Leases and other

documents required to be delivered under this contract upon reasonable prior notice at reasonable times.

**Section 10. Seller's Closing Obligations**
At the Closing, Seller shall deliver the following to Purchaser:

§10.01. A statutory form of bargain and sale deed without covenant against grantor's acts, containing the covenant required by Section 13 of the Lien Law, and properly executed in proper form for recording so as to convey the title required by this contract.

§10.02. All Leases initialled by Purchaser and all others in Seller's possession.

§10.03. A schedule of all cash security deposits and a check or credit to Purchaser in the amount of such security deposits, including any interest thereon, held by Seller on the Closing Date under the Leases or, if held by an Institutional Lender, an assignment to Purchaser and written instructions to the holder of such deposit to transfer the same to Purchaser, and appropriate instruments of transfer or assignment with respect to any lease securities which are other than cash.

§10.04. A schedule updating the Rent Schedule and setting forth all arrears in rents and all prepayments of rents.

§10.05. All Service Contracts initialled by Purchaser and all others in Seller's possession which are in effect on the Closing Date and which are assignable by Seller.

§10.06. An assignment to Purchaser, without recourse or warranty, of all of the interest of Seller in those Service Contracts, insurance policies, certificates, permits and other documents to be delivered to Purchaser at the Closing which are then in effect and are assignable by Seller.

§10.07. (a) Written consent(s) of the Mortgagee(s), if required under §2.03(b), and(b) certificate(s) executed by the Mortgagee(s) in proper form for recording and certifying (i) the amount of the unpaid principal balance thereof, (ii) the maturity date thereof, (iii) the interest rate, (iv) the last date to which interest has been paid thereon and (v) the amount of any escrow deposits held by the Mortgagee(s).

Seller shall pay the fees for recording such certificate(s). Any Mortgagee which is an Institutional Lender may furnish a letter complying with Section 274-a of the Real Property Law in lieu of such certificate.

§10.08. An assignment of all Seller's right, title and interest in escrow deposits for real estate taxes, insurance premiums and other amounts, if any, then held by the Mortgagee(s).

§10.09. All original insurance policies with respect to which premiums are to be apportioned or, if unobtainable, true copies or certificates thereof.

§10.10. To the extent they are then in Seller's possession and not posted at the Premises, certificates, licenses, permits, authorizations and approvals issued for or with respect to the Premises by governmental and quasigovernmental authorities having jurisdiction.

§10.11. Such affidavits as Purchaser's title company shall reasonably require in order to omit from its title insurance policy all exceptions for judgments, bankruptcies or other returns against persons or entities whose names are the same as or similar to Seller's name.

§10.12. Checks to the order of the appropriate officers in payment of all applicable real property transfer taxes and copies of any required tax returns therefor executed by Seller, which checks shall be certified or official bank checks if required by the taxing authority, unless Seller elects to have Purchaser pay any of such taxes and credit Purchaser with the amount thereof.

§10.13. To the extent they are then in Seller's possession, copies of current painting and payroll records. Seller shall make all other Building and tenant files and

records available to Purchaser for copying, which obligation shall survive the Closing.

§10.14. An original letter, executed by Seller or by its agent, advising the tenants of the sale of the Premises to Purchaser and directing that rents and other payments thereafter be sent to Purchaser or as Purchaser may direct.

§10.15. Notice(s) to the Mortgagee(s), executed by Seller, or by its agent, advising of the sale of the Premises to Purchaser and directing that future bills and other correspondence should thereafter be sent to Purchaser or as Purchaser may direct.

§10.16. If Seller is a corporation and if required by Section 909 of the Business Corporation Law, a resolution of Seller's board of directors authorizing the sale and delivery of the deed and a certificate executed by the secretary or assistant secretary of Seller certifying as to the adoption of such resolution and setting forth facts showing that the transfer complies with the requirements of such law. The deed referred to in §10.01 shall also contain a recital sufficient to establish compliance with such law.

§10.17. Possession of the Premises in the condition required by this contract, subject to the Leases and Tenancies, and keys therefor.

§10.18. Any other documents required by this contract to be delivered by Seller.

**Section 11. Purchaser's Closing Obligations**
At the Closing, Purchaser shall:

§11.01. Deliver to Seller checks in payment of the portion of the Purchase Price payable at the Closing, as adjusted for apportionments under Section 12, plus the amount of escrow deposits, if any, assigned pursuant to §10.08.

§11.02. Deliver to Seller the Purchase Money Mortgage, if any, in proper form for recording, the note secured thereby, financing statements, covering personal property, fixtures and equipment included in this sale and replacements thereof, all properly executed, and Purchaser shall pay the mortgage recording tax and recording fees for any Purchase Money Mortgage.

§11.03. Deliver to Seller an agreement indemnifying and agreeing to defend Seller against any claims made by tenants with respect to tenants' security deposits to the extent paid, credited or assigned to Purchaser under §10.03.

§11.04. Cause the deed to be recorded, duly complete all required real property transfer tax returns and cause all such returns and checks in payment of such taxes to be delivered to the appropriate officers promptly after the Closing.

§11.05. Deliver any other documents required by this contract to be delivered by Purchaser.

**Section 12. Apportionments**

§12.01. The following apportionments shall be made between the parties at the Closing as of the close of business on the day prior to the Closing Date:

(a) prepaid rents and Additional Rents (as defined in §12.03);

~~(b) interest on the Existing Mortgage(s);~~

(c) real estate taxes, water charges, sewer rents and vault charges, if any, on the basis of the fiscal period for which assessed, except that if there is a water meter on the Premises, apportionment at the Closing shall be based on the last available reading, subject to adjustment after the Closing when the next reading is available;

(d) wages, vacation pay, pension and welfare benefits and other fringe benefits of all persons employed at the Premises whose employment was not terminated at or prior to the Closing;

(e) value of fuel stored on the Premises, at the price then charged by Seller's supplier, including any taxes, ~~upon dip-stick reading or final reading from oil company)~~

(f) charges under transferable Service Contracts or permitted renewals or replacements thereof;

(g) permitted administrative charges, if any, on tenants' security deposits;

(h) dues to rent stabilization associations, if any;

(i) insurance premiums on transferable insurance policies listed on a schedule hereto or permitted renewals thereof;

(j) Reletting Expenses under §6.02, if any; and

(k) any other items listed in Schedule D.

If the Closing shall occur before a new tax rate is fixed, the apportionment of taxes at the Closing shall be upon the basis of the old tax rate for the preceding period applied to latest assessed valuation. Promptly after the new tax rate is fixed, the apportionment of taxes shall be recomputed. Any discrepancy resulting from such recomputation and any errors or omissions in computing apportionments at Closing shall be promptly corrected, which obligations shall survive the Closing.

§12.02. If any tenant is in arrears in the payment of rent on the Closing Date, rents received from such tenant after the Closing shall be applied in the following order of priority:

(a) first to the month preceding the month in which the Closing occurred;

(b) then to the month in which the Closing occurred;

(c) then to any month or months following the month in which the Closing occurred; and

(d) then to the period prior to the month preceding the month in which the Closing occurred.

If rents or any portion thereof received by Seller or Purchaser after the Closing are payable to the other party by reason of this allocation, the appropriate sum, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, shall be promptly paid to the other party, which obligation shall survive the Closing.

§12.03. If any tenants are required to pay percentage rent, escalation charges for real estate taxes, operating expenses, cost-of-living adjustments or other charges of a similar nature ("Additional Rents") and any Additional Rents are collected by Purchaser after the Closing which are attributable in whole or in part to any period prior to the Closing, then Purchaser shall promptly pay to Seller Seller's proportionate share thereof, less a proportionate share of any reasonable attorneys' fees, costs and expenses of collection thereof, if and when the tenant paying the same has made all payments of rent and Additional Rent then due to Purchaser pursuant to the tenant's Lease, which obligation shall survive the Closing.

## Section 13. Objections to Title, Failure of Seller or Purchaser to Perform and Vendee's Lien

§13.01. Purchaser shall promptly order an examination of title and shall cause a copy of the title report to be forwarded to Seller's attorney upon receipt. Seller shall be entitled to a reasonable adjournment or adjournments of the Closing for up to 60 days or until the expiration date of any written commitment of Purchaser's Institutional Lender delivered to Purchaser prior to the scheduled date of Closing, whichever occurs first, to remove any defects in or objections to title noted in such title report and any other defects or objections which may be disclosed on or prior to the Closing Date.

§13.02. If Seller shall be unable to convey title to the Premises at the Closing in accordance with the provisions of this contract or if Purchaser shall have any other grounds under this contract for refusing to consummate the purchase provided for herein, Purchaser, nevertheless, may elect to accept such title as Seller may be able to convey with a credit against the monies payable at the Closing equal to the reasonably estimated cost to cure the same (up to the Maximum Expense described below), but without any other credit or liability on the part of Seller. If Purchaser shall not so elect, Purchaser may terminate this contract and the sole liability of Seller shall be to refund the Down payment to Purchaser and to reimburse Purchaser for the net cost of title examination, but not to exceed the net amount charged by

Purchaser's title company therefor without issuance of a policy, and the net cost of updating the existing survey of the Premises or the net cost of a new survey of the Premises if there was no existing survey or the existing survey was not capable of being updated and a new survey was required by Purchaser's Institutional Lender. Upon such refund and reimbursement, this contract shall be null and void and the parties hereto shall be relieved of all further obligations and liability other than any arising under Section 14. Seller shall not be required to bring any action or proceeding or to incur any expense in excess of the Maximum Expense specified in Schedule D (or if none is so specified, the Maximum Expense shall be one-half of one percent of the Purchase Price) to cure any title defect or to enable Seller otherwise to comply with the provisions of this contract, but the foregoing shall not permit Seller to refuse to pay off at the Closing, to the extent of the monies payable at the Closing, mortgages on the Premises, other than Existing Mortgages, of which Seller has actual knowledge.

§13.03 Any unpaid taxes, assessments, water charges and sewer rents, together with the interest and penalties thereon to a date not less than two days following the Closing Date, and any other liens and encumbrances which Seller is obligated to pay and discharge or which are against corporations, estates or other persons in the chain of title, together with the cost of recording or filing any instruments necessary to discharge such liens and encumbrances of record, may be paid out of the proceeds of the monies payable at the Closing if Seller delivers to Purchaser on the Closing Date official bills for such taxes, assessments, water charges, sewer rents, interest and penalties and instruments in recordable form sufficient to discharge any other liens and encumbrances of record. Upon request made a reasonable time before the Closing, Purchaser shall provide at the Closing separate checks for the foregoing payable to the order of the holder of any such lien, charge or encumbrance and otherwise complying with §2.02. If Purchaser's title insurance company is willing to insure both Purchaser and Purchaser's Institutional Lender, if any, that such charges, liens and encumbrances will not be collected out of or enforced against the Premises, then, unless Purchaser's Institutional Lender reasonably refuses to accept such insurance in lieu of actual payment and discharge, Seller shall have the right in lieu of payment and discharge to deposit with the title insurance company such funds or assurances or to pay such special or additional premiums as the title insurance company may require in order to so insure. In such case the charges, liens and encumbrances with respect to which the title insurance company has agreed so to insure shall not be considered objections to title.

§13.04. If Purchaser shall default in the performance of its obligation under this contract to purchase the Premises, the sole remedy of Seller shall be to retain the Downpayment as liquidated damages for all loss, damage and expense suffered by Seller, including without limitation the loss of its bargain.

§13.05. Purchaser shall have a vendee's lien against the Premises for the amount of the Downpayment, but such lien shall not continue after default by Purchaser under this contract.

## Section 14. Broker

§14.01. If a broker is specified in Schedule D, Seller and Purchaser mutually represent and warrant that such broker is the only broker with whom they have dealt in connection with this contract and that neither Seller nor Purchaser knows of any other broker who has claimed or may have the right to claim a commission in connection with this transaction, unless otherwise indicated in Schedule D. The commission of such broker shall be paid pursuant to separate agreement by the party specified in Schedule D. If no broker is specified in Schedule D, the parties acknowledge that this contract was brought about by direct negotiation between Seller and Purchaser and that neither Seller nor Purchaser knows of any broker entitled to a commission in connection with this transaction. Unless otherwise provided in Schedule D, Seller and Purchaser shall indemnify and defend each other against

any costs, claims or expenses, including attorneys' fees, arising out of the breach on their respective parts of any representations, warranties or agreements, contained in this paragraph. The representations and obligations under this paragraph shall survive the Closing or, if the Closing does not occur, the termination of this contract.

**Section 15. Notices** *declaring a party in breach*

§15.01. All notices under this contract shall be in writing and shall be delivered personally or shall be sent by prepaid registered or certified mail, addressed as set forth in Schedule D, or as Seller or Purchaser shall otherwise have given notice *provided give notice via email*

**Section 16. Limitations on Survival of Representations, Warranties, Covenants and other Obligations**

§16.01. Except as otherwise provided in this contract, no representations, warranties, covenants or other obligations of Seller set forth in this contract shall survive the Closing, and no action base thereon shall be commenced after the Closing. The representations, warranties, covenants and other obligations of Seller set forth in §4.03, §6.01 and §6.02 shall survive until the Limitation Date specified in Schedule D (or if none is so specified, the Limitation Date shall be the date which is six months after the Closing Date), and no action based thereon shall be commenced after the Limitation Date.

§16.02. The delivery of the deed by Seller, and the acceptance thereof by Purchaser, shall be deemed the full performance and discharge of every obligation on the part of Seller to be performed hereunder, except those obligations of Seller which are expressly stated in this contract to survive the Closing.

**Section 17. Miscellaneous Provisions**

§17.01. [Reassignment of the Existing Mortgage(s)] is prohibited under §2.02(b) Purchaser shall not assign this contract or its rights hereunder without the prior written consent of Seller. No permitted assignment of Purchaser's rights under this contract shall be effective against Seller

unless and until an executed counterpart of the instrument of assignment shall have been delivered to Seller and Seller shall have been furnished with the name and address of the assignee. The term "Purchaser" shall be deemed to include the assignee under any such effective assignment.

§17.02. This contract embodies and constitutes the entire understanding between the parties with respect to the transaction contemplated herein and all prior agreements, understandings, representations and statements, oral or written, are merged into this contract. Neither this contract nor any provision hereof may be waived, modified, amended, discharged or terminated except by an instrument signed by the party against whom the enforcement of such waiver, modification, amendment, discharge or termination is sought, and then only to the extent set forth in such instrument.

§17.03. This contract shall be governed by, and construed in accordance with, the law of the State of New York.

§17.04. The captions in this contract are inserted for convenience of reference only and in no way define, describe or limit the scope or intent of this contract or any of the provisions hereof.

§17.05. This contract shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs or successors and permitted assigns.

§17.06. This contract shall not be binding or effective until properly executed and delivered by Seller and Purchaser.

§17.07. As used in this contract, the masculine shall include the feminine and neuter, the singular shall include the plural and the plural shall include the singular, as the context may require.

§17.08. If the provisions of any schedule or rider to this contract are inconsistent with the provisions of this contract, the provisions of such schedule or rider shall prevail. Set forth in Schedule D is a list of any and all schedules and riders which are attached hereto but which are not listed in the Table of Contents.

*except an entity owned by the Purchaser*

IN WITNESS WHEREOF, the Parties hereto have duly executed this Contract as of the date first above written.

SELLER(S):                                              BUYER(S):

_Maria Lopez Perez_                    _Uri Mermelstein_
733 Prospect Realty Service Corp.        Uri Mermelstein
By: Maria Lopez Perez


_____                    _____


Receipt by Escrowee:
The undersigned Escrowee hereby acknowledges receipt of, by check subject to collection, to be held in escrow pursuant to §2.05.

_____
Eduardo Molina/Esq. / MOLINA LAW, P.C.

### RIDER TO CONTRACT OF SALE

PREMISES:      733 Prospect Avenue Bronx New Yok 10455
SELLER:        733 Prospect Realty Service Corp.
PURCHASER:     Uri Mermelstein

The printed portion of the Contract and any rider thereto is hereby modified and supplemented. Wherever there is any conflict as between this Rider and the printed portion of the Contract and/or any other rider thereto, the provisions of this Rider are paramount and the Contract shall be construed accordingly.

1. **SUBJECT TO:** The premises are being sold subject to:
   (a)   Any state of facts which an accurate survey and/or inspection may show, provided same does not render title unmarketable;
   (b)   Covenants, restrictions, easements, declarations, rights, reservations, consents and agreements of record, if any, provided that same are not violated by the present use and existing structures and improvements;
   (c)   Projections and encroachments, if any, of retaining walls, doors, ledges, linters, windows, coping cornices, sills, steps, ornamental projections, sidewalk, elevators, fences, fire escapes and variances, if any between fences, retaining walls, and the like and lines of record title;
   (d)   Existing tenancies and present lettings and leases as may exist at time of closing possible lack of right to maintain vault or vaulted areas under, and coal chutes or fuel oil supply lines in the sidewalk;
   (e)   Any proposed changes in the street lines as shown on the Final Topographical Maps of the City of New York and any variations between the description herein and the Tax Map Description

2. **CONDITION "AS IS":** The purchaser represents that the purchaser has inspected said premises, is familiar with the physical condition thereof, and is purchasing, said premises "AS IS" as of the date hereof, subject to normal wear and tear to the date of closing. This contract, as written, contains all of the terms of the agreement entered into between the parties and the purchaser acknowledges that the seller

otherwise to incur any expense to render title to the
premises marketable in conformity with this Contract.
The purchaser may, nevertheless, accept such title, as
the seller may be able to convey without abatement in
price and without any other liability on the part of
the seller. The acceptance of a deed by the purchaser
shall be deemed to constitute full performance on the
part of the seller hereunder, except for those items,
if any, which are herein specifically stated to
survive the delivery of the deed.

4. **LIENS:** (a) Unpaid franchise taxes of any corporation
in the chain of title or any other Lien(s) against the
premises which are dischargeable by the payment of
money, shall not constitute an objection to title and
shall be no defense to the passage of title, provided
that a title company, which is licensed to do business
in the State of New York, shall insure against
collection of said lien from the subject premises.
Under the terms hereof to take title subject, shall
not be an objection to the passage of title provided
that appropriate instruments in recordable form for
the discharge of the same are delivered at the
closing. The purchaser agrees, upon reasonable notice,
to issue and deliver at the closing, separate checks,
not in excess of the unpaid portion of the cash
consideration, in such amounts and to such payees as
the seller may direct.

5. **VIOLATION:** *Notwithstanding anything stated
to the contrary, premises shall be conveyed free of any
violations and monetary fines up to the date of
closing*

6. **ADJUSTMENTS:** All adjustments and apportionment's shall
be made as of midnight immediately prior to the date
of closing or the date of delivery of possession,
whichever shall last occur, and shall be calculated on
the basis of a 360 day year and a 30 day month.

7. **CONTRACT DOWNPAYMENT:** (a) The purchaser's down payment
shall be held in escrow by seller's attorneys pursuant
to the annexed Escrow Rider.

(b) If the payment made on account of the purchase
price at the time of the execution of this agreement
is by check and if said check fails due collection,
the seller, at its option, may cancel this contract,
declare same null void and of no force and effect,

and, furthermore, may pursue its remedies against the
purchaser upon said check or in any manner permitted
by law, such remedies being cumulative.

8. **ASSIGNMENT:** ~~This contract may NOT be assigned by the~~
~~purchaser without the seller's prior written consent.~~ *See § 120l*
*of the*
*contract.*

9. **LIQUIDATED DAMAGES:** Should the purchaser default in
the performance of any of the terms, conditions or
provisions of this contract and thereby fail to close
pursuant hereto, then all attorney's paid on account
of this contract shall be retained by the seller as
and for liquidated damages, whereupon this contract
shall become null and void and neither party shall
have any further rights as against the other by reason
hereof.

10.    **LEGAL USE AND OCCUPANCY:** This contract and the
purchaser's obligations hereunder are subject to and
conditioned upon the premises being a multi unit
Apartment Building

11.    **TITLE OBJECTIONS:** Purchaser shall promptly order
a title report and shall forward a copy to sellers'
attorneys at least ten (10) days prior to the date set
forth for the closing herein, together with a
statement specifying the matters which constitute
defects of title not acceptable to Purchasers pursuant
to the terms of this contract. The seller shall then
at its option, have sixty (60) days within which to
investigate and/or attempt to satisfy or remove the
same without thereby admitting the validity thereof.

12.    **MDR REGISTRATION:** At the closing of title, the
Purchaser agrees to complete, execute, and file the
necessary multiple registration cards with the
Department of Buildings reflecting the change of
ownership.

13.    **TAX REDUCTION PROCEEDINGS:** If a proceeding is
pending to correct or reduce the assessed valuation of
the property described in this Contract for a period
extending after the Purchaser's acquisition of title,
such proceeding shall be continued by the Seller, at
the option of the Seller, and the Purchaser agrees to
pay its proportionate share of the fees and
disbursements in the event that such a reduction is

13.1. *Seller shall grant Purchaser access and permission*
*to obtain information from DHCR*
13.2. *Purchaser is entitled to inspect any vacent property*
*within 48 hours of a the scheduled closing.*

obtained. All proceeds received on account of such
proceeding shall be adjusted if as and when received
as of the date of closing. These provisions shall
survive the delivery of the deed.

14.    FUEL ADJUSTMENT: In additional to all of the
other adjustments provided for herein and/ or which
are customarily made, it is agreed that the Seller
will be credited with an adjustment of all fuel plus
all applicable taxes thereon at delivery prices
thereof, at the premises, on the agreed date of
adjustments, Seller shall provide a certificate from a
fuel company certifying the amount of fuel in the tank
as of the closing date and the amount paid by the
seller for such fuel.

15.    WATER METER ADJUSTMENT: *Seller shall obtain within*
*30 days of closing a FINAL WATER METER*
*Reading from DEP.*

16.    ~~POST POSSESSION: Sale shall be subject to a Sixty~~
~~(60) day post possession agreement for Two (2)~~
~~apartments.~~

17.    RECORDATION: The Purchaser is specifically and
expressly prohibited from filing or recording either
this contract or any memorandum thereof. Should the
Purchaser violate or breach this provision, such
breach shall be deemed material and, at the option of
the Seller, shall constitute a default hereunder on
the part of the purchaser, entitling the Seller to
terminate this Contract and to retain the down payment
hereunder as and for liquidated damages.

18. *This is an all cash deal purchase's obligation to purchase*
*is Not subject to financing.*

*Maria Lopez Perez*
Seller:
733 Prospect Realty Service Corp.
By: Maria Lopez Perez

Purchaser:

## CERTIFIED RESOLUTION
## of the Board of Directors of 733 Prospect Realty Service Corp.

Whereas, it is in the best interest of 733 Prospect Realty Service Corp. (hereinafter "Corporation") (IRS Tax ID: 45-4744371) to sell its Premises known as 733 Prospect Avenue, Bronx, NY 10455 and also known as Bronx County, Tax Block 02675, Tax Lot 0051 (hereinafter "Premises") for the sum of $2,400,000 so as to pay existing liens against the Premises,

Be It Therefore Resolved, that the sale of the Premises to Uri Mermelstein, or to an entity controlled by, or under the common control of its principal, Uri Mermelstein, for said sum of $2,400,000 by contract for said sale and with this Corporation's payment of 6 % broker's commission ($144,000) to Benny Diasparra doing business as Exit Realty Search at title closing is authorized by this Corporation subject to such approval as is necessary by the U.S. Bankruptcy Court, S.D.N.Y., in this Corporation's Chapter 11 Case No. 17-10957 (MKV).

Be It Further Resolved, that Maria Lopez Perez, President of this Corporation, is authorized and directed to execute and deliver all documents necessary to close title in connection with said sale of the Premises; that if Maria Lopez Perez is unable to do so for any reason, then Daniel Torres Cruz, Secretary/Treasurer of this Corporation, is hereby authorized to do so for the Corporation; that Albert H. Barkey is authorized to act as escrowee and attorney for the Corporation in said sale transaction through the U.S. Bankruptcy Court.

Dated: March 26, 2018

By: _Maria Lopez Perez_
Maria Lopez Perez as President

By: _Daniel Torres Cruz_
Daniel Torres Cruz as Secretary/Treasurer

WE CERTIFY, DECLARE, AND STATE under the penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct. Executed on March 26, 2018.

_Maria Lopez Perez_
MARIA LOPEZ PEREZ

_Daniel Torres Cruz_
DANIEL TORRES CRUZ

## CERTIFIED RESOLUTION
### of the Board of Directors of 733 Prospect Realty Service Corp.

**733 Prospect Realty Service Corp.** (hereinafter "Corporation") (IRS Tax ID: 45-4744371) — the owner of a 17-unit apartment building known as 733 Prospect Avenue, Bronx, NY 10455 and also known as Bronx County, Tax Block 02675, Tax Lot 0051 (hereinafter "Premises"); being in Chapter 11 Case No. 17-10957 (MKV) in the U.S. Bankruptcy Court, Southern District of New York (hereinafter "bankruptcy case") — by a meeting of its shareholder and Board of Directors **HEREBY RESOLVES, AUTHORIZES, CONSENTS, AND DIRECTS into full force and effect:**

That attorney Albert H. Barkey (New York registration number 1822709) as the bankruptcy attorney for the Corporation shall substitute and replace attorney Orlando Molina (New York registration number 452986) to act as escrowee and attorney for the Corporation in its sale transaction through the U.S. Bankruptcy Court of its premises known as 733 Prospect Avenue, Bronx, NY 10455 to Uri Mermelstein.

Dated: March 26, 2018

By: *Maria Lopez Perez*
    Maria Lopez Perez as President

By: *Daniel Torres Cruz*
    Daniel Torres Cruz as Secretary/Treasurer

WE CERTIFY, DECLARE, AND STATE under the penalty of perjury, in accordance with 28 U.S.C. § 1746, that the foregoing is true and correct. Executed on March 26, 2018.

*Maria Lopez Perez*
MARIA LOPEZ PÉREZ

*Daniel Torres Cruz*
DANIEL TORRES CRUZ

## BANKRUPTCY RIDER TO CONTRACT OF SALE

PREMISES:          733 Prospect Avenue, Bronx, NY 10455
SELLER:            733 Prospect Realty Services Corp.
PURCHASER:         Uri Mermelstein

This Bankruptcy Rider to the contract of sale with its rider hereby changes, modifies, and overrides
the contract of sale with its rider as follows:

Title closing shall take place within 30 days from the entry of the order in the U.S.
Bankruptcy Court in Seller's S.D.N.Y. Chapter 11 Case No. 17-10957 approving this contract of sale
with its riders. The transaction shall be a so-called all cash purchase not subject to financing of the
purchase. Purchaser Uri Mermelstein and his attorney hereby agree to deal with and substitute Albert
H. Barkey, the Seller's bankruptcy attorney, for the prior non-bankruptcy attorney — Orlando
Molina, Esq. — involved in negotiating the contract and its (non-bankruptcy) rider. And Purchaser
Uri Mermelstein and his attorney hereby agree to transfer to Albert H. Barkey, the Seller's
bankruptcy attorney, the contract deposit (down payment) escrow — held by the prior non-
bankruptcy attorney Orlando Molina, Esq. involved in negotiating the contract and its (non-
bankruptcy) rider — to "Albert H. Barkey as attorney" for title closing through the U.S. Bankruptcy
Court.

Dated: April 5, 2018

SO AGREED, CONTRACTED, AND CONSENTED TO:


By: _____
        Uri Mermelstein as Purchaser


By: _____
        Affar Baksh as attorney for Purchaser

# ALBERT H. BARKEY
### Attorney at Law
**277 Broadway, Suite 408, New York, NY 10007**
**(646) 410-1818   Fax: (646) 219-3072   Email: ahboffice@yahoo.com**

April 9, 2018

By email to: anupa.lall@gmail.com

Affar Baksh, Esq.
146-06 Hillside Avenue
Jamaica, NY 11435

>**Re:   733 Prospect Realty Service Corp. to Uri Mermelstein**
>**Premises: 733 Prospect Avenue, Bronx, NY 10455**
>**Consent to Assignment of Contract by**
>**<u>Purchaser, Uri Mermelstein, to 733 Prospect Avenue LLC</u>**

Attorney Baksh:

You know me as the attorney for the above-referenced Seller regarding the above-referenced Premises.

Seller by its attorney hereby consents to the assignment of its contract to sell the above-referenced Premises from Uri Mermelstein as Purchaser to 733 Prospect Avenue LLC as Purchaser. Uri Mermelstein thereby relinquishes all rights under the contract. And the contract, as before, is subject to approval by the U.S. Bankruptcy Court in Seller's Chapter 11 Bankruptcy case (S.D.N.Y. case no. 17-10957)

Very truly yours,

*Albert H. Barkey*

# NYS Department of State

## Division of Corporations

### Entity Information

The information contained in this database is current through April 6, 2018.

Selected Entity Name: 733 PROSPECT AVENUE LLC
Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | 733 PROSPECT AVENUE LLC |
| **DOS ID #:** | 5293778 |
| **Initial DOS Filing Date:** | FEBRUARY 27, 2018 |
| **County:** | BRONX |
| **Jurisdiction:** | NEW YORK |
| **Entity Type:** | DOMESTIC LIMITED LIABILITY COMPANY |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**

C/O AFFAR BAKSH
146-06 HILLSIDE AVENUE
JAMAICA, NEW YORK, 11435

**Registered Agent**

AFFAR BAKSH
146-06 HILLSIDE AVENUE
JAMAICA, NEW YORK, 11435

This office does not require or maintain
information regarding the names and addresses of
members or managers of nonprofessional limited
liability companies. Professional limited liability
companies must include the name(s) and address

(es) of the original members, however this information is not recorded and only available by viewing the certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| No Information Available | | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| FEB 27, 2018 | Actual | 733 PROSPECT AVENUE LLC |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS Homepage  |  Contact Us

## ADDITIONAL RIDER TO CONTRACT OF SALE AND RIDER

PREMISES:        733 Prospect Avenue, Bronx, NY 10455 ("Premises")
SELLER:          733 Prospect Realty Services Corp.
PURCHASER:       733 Prospect Realty LLC by assignment from Uri Mermelstein

THIS ADDITIONAL RIDER TO THE CONTRACT OF SALE WITH ITS RIDER hereby changes, modifies, and overrides the contract of sale with its rider as follows: Rider at its paragraph 5 regarding violations at the Premises is deleted and fully changed to the following:

> The Premises shall be conveyed in "as is" condition to include conveying with any violations and monetary fines as may exist up to the date of closing. However, the Seller and Purchaser agree that the Seller shall deposit funds as determined by the title company from the sale proceeds into the escrow account of the title company for Purchaser's benefit to pay all monetary fines in connection with the Premises and a further escrow as agreed upon by the parties at that time to reasonably cure all violations of record.

Dated: May 1, 2018

SO AGREED, CONTRACTED, AND CONSENTED TO:


By:_____
    733 Prospect Avenue LLC as Purchaser


By:_____
    Affar Baksh as attorney for Purchaser


By:_____
    Albert H. Barkey as attorney for Seller

## CONTRACT

BETWEEN 733 Prospect Realty Service Corp. (hereinafter "Seller") AND Benny Diasparra doing business as Exit Realty Search (hereinafter "Broker"):

Subject to such approval as is necessary by the U.S. Bankruptcy Court, S.D.N.Y., in Seller's Chapter 11 Case No. 17-10957 (MKV), Seller and Broker agree that Broker is the sole broker in connection with the contract of sale of Seller's premises known as 733 Prospect Avenue, Bronx, NY 10455 to Uri Mermelstein ("Purchaser"), and that Broker shall be paid a broker's fee of 6% ($144,000) by Seller at title closing from the proceeds of said sale.

Dated: February 24, 2018

**733 PROSPECT REALTY SERVICE CORP.**


By: _Maria Lopez Perez_
   Maria Lopez Perez, President

**EXIT REALTY SEARCH**


By: _____
      BENNY DIASPARRA as owner
3928 East Tremont Avenue
Bronx, NY 10465
(347) 202-4965


Schedule D

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2012091300114001001E1D27

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 4 |
|---|---|

**Document ID:** 2012091300114001    Document Date: 08-31-2012    Preparation Date: 09-13-2012
**Document Type:** DEED
**Document Page Count:** 3

| PRESENTER: | RETURN TO: |
|---|---|
| JUDICIAL TITLE INSURANCE AGENCY, LLC PICKUP | JUDICIAL TITLE INSURANCE AGENCY, LLC PICKUP |
| 800 WESTCHESTER AVENUE STE S340 | 800 WESTCHESTER AVENUE STE S340 |
| 20071 | 20071 |
| RYE BROOK, NY 10573 | RYE BROOK, NY 10573 |
| 914-381-6700 | 914-381-6700 |
| chalpin@judicialtitle.com | chalpin@judicialtitle.com |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BRONX | 2675 | 51 | Entire Lot | 733 PROSPECT AVENUE |

**Property Type:** APARTMENT BUILDING

**CROSS REFERENCE DATA**

CRFN_____ or Document ID_____ or _____ Year_____ Reel ___ Page _____ or File Number_____

**PARTIES**

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 733 PROSPECT REALTY, INC. | 733 PROSPECT REALTY SERVICE CORP. |
| 713 PROSPECT AVENUE | 713 PROSPECT AVENUE |
| BRONX, NY 10455 | BRONX, NY 10455 |

**FEES AND TAXES**

| Mortgage | | | |
|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | |
| Taxable Mortgage Amount: | $ | 0.00 | |
| Exemption: | | | |
| TAXES: County (Basic): | $ | 0.00 | |
| City (Additional): | $ | 0.00 | |
| Spec (Additional): | $ | 0.00 | |
| TASF: | $ | 0.00 | |
| MTA: | $ | 0.00 | |
| NYCTA: | $ | 0.00 | |
| Additional MRT: | $ | 0.00 | |
| TOTAL: | $ | 0.00 | |
| Recording Fee: | $ | 52.00 | |
| Affidavit Fee: | $ | 0.00 | |

Filing Fee:
$ 250.00

NYC Real Property Transfer Tax:
$ 0.00

NYS Real Estate Transfer Tax:
$ 0.00

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    10-17-2012 10:48
City Register File No.(CRFN):
**2012000410373**

*Jeanette M. Hill*

**City Register Official Signature**

— Quitclaim Deed — Individual or Corporation (single sheet)

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

*as of*

**THIS INDENTURE,** made the 15 day of August in the year 2012

**BETWEEN**

733 Prospect Realty Inc., 713 Prospect Avenue, Bronx, NY 10455

party of the first part, and 733 Prospect Realty Service Corp., 713 Prospect Avenue, Bronx, New York 10455

party of the second part,

**WITNESSETH,** that the party of the first part, in consideration of Ten Dollars and other valuable consideration paid by the party of the second part, does hereby remise, release and quitclaim unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the See Schedule A attached.

**TOGETHER** with all right, title and interest, if any, of the party of the first part of, in and to any streets and roads abutting the above-described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

**AND** the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

*Maria Lopez Perez*
Maria Lopez Perez, President

*Nestor Rosado, Esq.*
Nestor Rosado, Esq.

SEAL

## PLATINUM ABSTRACT OF NEW YORK, INC.

### Title No. 03PL976B

### SCHEDULE A

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of the Bronx, County of the Bronx, City and State of New York, bounded and described as follows:

BEGINNING at a point on the westerly side of Prospect Avenue, distant 25.02 feet southerly along the same from the corner formed by the intersection of the southerly side of East 156th Street with the said westerly side of Prospect Avenue;

RUNNING THENCE westerly parallel with the said southerly side of East 156th Street, 89.56 feet;

THENCE southerly at right angles to the said southerly side of East 156th Street, 37 feet 6 inches;

THENCE easterly again parallel with the said southerly side of East 156th Street and through a party wall, 88.06 feet to the westerly side of Prospect Avenue;

THENCE northerly along the said westerly side of Prospect Avenue, 37.53 feet to the point or place of BEGINNING.

Said premises being the lot known and designated as Lot 206 and the northerly half of the lot known and designated as Lot 205 on a certain map entitled, "Map of a portion of the Dater Estate in the 23rd Ward of the City of New York" surveyed and laid out by John G. Van Horn, C.S., and filed in the Office of the Register of New York County on 2/23/1894 as Map Number 838.

**FOR CONVEYANCING ONLY**

The policy to be issued under this report will insure the title to such buildings and improvements erected on the premises which by law constitute real property.

TOGETHER with all the right, title and interest of the party of the first part, of, in and to the land lying in the street in front of and adjoining said premises.

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of New York, ss:

On the 15 day of August in the year 2012, before me, the undersigned, personally appeared Maria Lopez Perez, President/Owner

, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of        , ss:

On the        day of        in the year        , before me, the undersigned, personally appeared

, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that the person upon behalf of which the individual(s) acted, executed the instrument.

*Nestor Rosado*
*No. 02RO4733073*
*Expires 12/20/14*

ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE

State of New York, County of        , ss:
On the        day of        in the year        , before me, the undersigned, a Notary Public in and for said State, personally appeared        , the
subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

(if the place of residence is in a city, include the street and street number if any, thereof); that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

*New State Notary Public*
*Qualifier New York*

*State of        , County of        , ss:
*(Or insert District of Columbia, Territory, Possession or Foreign County)

On the        day of        in the year        , before me        the undersigned personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the

(add the city or political subdivision and the state or country or other place the acknowledgement was taken).

## Quitclaim Deed

SECTION:

BLOCK: 2675

LOT: 51

COUNTY OR TOWN: Bronx

Title No.

733 Prospect Realty Inc.

TO

733 Prospect Realty Service Corp.



DISTRIBUTED BY

YOUR TITLE EXPERTS
The Judicial Title Insurance Agency LLC
800-281-TITLE (8485)  FAX: 800-FAX-8396

RETURN BY MAIL TO:

Nestor Rosado, Esq.
55 Overlook Terrace Suite
New York, New York 10033
212-781-4808

**NYC DEPARTMENT OF FINANCE
OFFICE OF THE CITY REGISTER**



2012091300114001001SD3A6

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2012091300114001     Document Date: 08-31-2012     Preparation Date: 09-13-2012
Document Type: DEED

**ASSOCIATED TAX FORM ID:** 2012083100204

**SUPPORTING DOCUMENTS SUBMITTED:**

| | Page Count |
|---|---|
| RP - 5217 REAL PROPERTY TRANSFER REPORT | 2 |

**REAL PROPERTY TRANSFER REPORT**

STATE OF NEW YORK
STATE BOARD OF REAL PROPERTY SERVICES

# RP - 5217NYC

| FOR CITY USE ONLY | |
|---|---|
| C1. County Code | C2. Date Deed Recorded    Month    Day    Year |
| C3. Book OR | C4. Page |
| C5. CRFN | |

## PROPERTY INFORMATION

**1. Property Location**
733 PROSPECT AVENUE    BRONX    10455
STREET NUMBER    STREET NAME    BOROUGH    ZIP CODE

**2. Buyer Name**
733 PROSPECT REALTY SERVICE CORP.
LAST NAME / COMPANY                                FIRST NAME
LAST NAME / COMPANY                                FIRST NAME

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY                                FIRST NAME
STREET NUMBER AND STREET NAME    CITY OR TOWN    STATE    ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**    1    # of Parcels    OR ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

Check the boxes below as they apply:
6. Ownership Type is Condominium ☐
7. New Construction on Vacant Land ☐

**5. Deed Property Size**
FRONT FEET    X    DEPTH    OR    ACRES

**8. Seller Name**
733 PROSPECT REALTY, INC.
LAST NAME / COMPANY                                FIRST NAME
LAST NAME / COMPANY                                FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| | | | | | |
|---|---|---|---|---|---|
| A ☐ One Family Residential | C ☐ Residential Vacant Land | E ☐ Commercial | G ☐ Entertainment / Amusement | I ☐ Industrial |
| B ☐ 2 or 3 Family Residential | D ☐ Non-Residential Vacant Land | F ☑ Apartment | H ☐ Community Service | J ☐ Public Service |

## SALE INFORMATION

**14. Check one or more of these conditions as applicable to transfer:**

| | |
|---|---|
| A ☐ | Sale Between Relatives or Former Relatives |
| B ☐ | Sale Between Related Companies or Partners in Business |
| C ☐ | One of the Buyers is also a Seller |
| D ☐ | Buyer or Seller is Government Agency or Lending Institution |
| E ☐ | Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F ☐ | Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G ☐ | Significant Change in Property Between Taxable Status and Sale Dates |
| H ☐ | Sale of Business is Included in Sale Price |
| I ☑ | Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J ☐ | None |

**10. Sale Contract Date**    8 / 31 / 2012
Month    Day    Year

**11. Date of Sale / Transfer**    8 / 31 / 2012
Month    Day    Year

**12. Full Sale Price** $    0
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) *Please round to the nearest whole dollar amount.*

**13. Indicate the value of personal property included in the sale**

## ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill

**15. Building Class**    C, 4

**16. Total Assessed Value (of all parcels in transfer)**    2,422,550

**17. Borough, Block and Lot / Roll Identifier(s)** ( If more than three, attach sheet with additional Identifier(s) )
BRONX 2675 51

201208310020420101

| CERTIFICATION | I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments. |

**BUYER** _Maria Lopez Peirz_    DATE 9/7/2012

BUYER SIGNATURE

715 PROSPECT AVENUE

STREET NUMBER    STREET NAME (AFTER SALE)

BRONX

CITY OR TOWN

STATE NY    ZIP CODE 10455

BUYER'S ATTORNEY

LAST NAME _Rosado_    FIRST NAME _NESTOR R_

AREA CODE _212_    TELEPHONE NUMBER _781-4808_

**SELLER** _Maria Lopez Peirz_    DATE 9/7/2012

SELLER SIGNATURE

2012083100204201



**The City of New York**
**Department of Environmental Protection**
**Bureau of Customer Services**
**59-17 Junction Boulevard**
**Flushing, NY  11373-5108**

## Customer Registration Form for Water and Sewer Billing

### Property and Owner Information:

(1)   Property receiving service: BOROUGH:  BRONX                BLOCK: 2675              LOT: 51

(2)   Property Address: 733 PROSPECT AVENUE, BRONX, NY 10455

(3)   Owner's Name:        733 PROSPECT REALTY SERVICE CORP.

Additional Name:

### Affirmation:

☑    Your water & sewer bills will be sent to the property address shown above.

### Customer Billing Information:

#### Please Note:

A.   Water and sewer charges are the legal responsibility of the owner of a property receiving water and/or sewer service. The owner's responsibility to pay such charges is not affected by any lease, license or other arrangement, or any assignment of responsibility for payment of such charges. Water and sewer charges constitute a lien on the property until paid. In addition to legal action against the owner, a failure to pay such charges when due may result in foreclosure of the lien by the City of New York, the property being placed in a lien sale by the City or Service Termination.

B.   Original bills for water and/or sewer service will be mailed to the owner, **at the property address or to an alternate mailing address**. DEP will provide a duplicate copy of bills to one other party (such as a managing agent), however, any failure or delay by DEP in providing duplicate copies of bills shall in no way  relieve the owner from his/her liability to pay all outstanding water and sewer charges. Contact DEP at (718) 595-7000 during business hours or visit www.nyc.gov/dep to provide us with the other party's information.

### Owner's Approval:

The undersigned certifies that he/she/it is the owner of the property receiving service referenced above; that he/she/it has read and understands Paragraphs A & B under the section captioned "Customer Billing Information"; and that the information supplied by the undersigned on this form is true and complete to the best of his/her/its knowledge.

Print Name of Owner:

Signature: *Maria Lopez Perez*_____Date (mm/dd/yyyy)

Name and Title of Person Signing for Owner, if applicable:

BCS-7CRF-ACRIS   REV. 8/08

2012083100204101

**733 Prospect Realty Service Corportation**
733 Prospect av.
Bronx, N.Y. 10455
Tel. 1347-726-3963

| # | Name | | | | |
|---|------|---|---|---|---|
| 1 | Yomaira Jacobo | 3/1/2017 | 2/28/2018 | $ 1,207.50 | 2 |
| 2 | Henry Jimenez | 8/1/2017 | 7/31/2019 | $ 719.43 | 3 |
| 3 | Hemmer L. Pascal * | 10/1/2014 | 09/30/ | $ 1,448.58 | 3 |
| 4 | Concepcion Rosa Mendez | 10/1/2017 | 9/30/2019 | $ 1,037.02 | 2 |
| 5 | Elizabeth Mero | 11/24/2016 | 11/23/2018 | $ 1,032.27 | 3 |
| 6 | Silvia Soler | 8/1/2017 | 7/31/2018 | $ 1,010.00 | 3 |
| 7 | Dayanara Perez | 9/1/2017 | 8/31/2018 | $ 1,272.96 | 2 |
| 8 | Dysney Alonso | 9/1/2017 | 8/31/2019 | $ 765.23 | 3 |
| 9 | Alexis Alonso | 9/1/2017 | 8/31/2018 | $ 1,068.99 | 3 |
| 10 | Abelino Ramirez | 9/1/2017 | 8/31/2018 | $ 1,325.00 | 3 |
| 11 | Heraclides Alonso | 1/1/2016 | 12/31/2017 | $ 1,215.84 | 3 |
| 12 | Maria Bailon | 5/1/2016 | 4/30/2018 | $ 1,253.34 | 3 |
| 12-A | Vacante | | | $ 1,300.00 | 2 |
| 14 | Margarita Hernandez | 11/1/2016 | 10/31/2017 | $ 1,239.12 | 2 |
| 15 | Jose Chavez | 10/1/2015 | 9/30/2017 | $ 804.05 | 3 |
| 16 | Edgar A. Suarez | 10/1/2016 | 9/30/2018 | $ 1,379.55 | 3 |
| 18-B | Ingrid Carmona | 6/1/2017 | 5/31/2018 | $ 800.00 | 1 |
| Total | | | | $ 18,878.88 | 44 |

* Court Proceeding / Stipulation

Rent Roll Certification

I certify that the rent roll dated _FEB. 1, 2018_ for the property above is true and correct.

By: _Jose Suarez_
Vice President

Office
689 Prospect Avenue, Suite 1
Bronx, New York 10455



## Terms and Conditions (Remitter and Payee):

* Please keep this copy for your record of the transaction
* The laws of a specific state will consider these funds to be "abandoned"
  if the Cashier's Check is not cashed by a certain time
    - Please cash/deposit this Cashier's Check as soon as possible to
      prevent this from occurring
    - In most cases, the funds will be considered "abandoned"
      before the "Void After" Date
* Placing a Stop Payment on a Cashier's Check
    - Stop Payment can only be placed if the Cashier's Check
      is lost, stolen, or destroyed
    - We may not re-issue or refund the funds after the stop payment has
      been placed until 90 days after the original check was issued
* Please visit a Chase branch to report a lost, stolen, or destroyed Cashier's Check
  or for any other information about this item

FOR YOUR PROTECTION SAVE THIS COPY        Customer Copy
**CASHIER'S CHECK**                        9807027289

04/05/2018
Void after 7 years

Remitter:    MOLINA LAW P.C.

$** 240,000.00 **

Pay To The
Order Of:    ALBERT H. BARKEY, ESQ., AS ATTORNEY

Memo:
Note: For information only. Comment has no effect on bank's payment.

Drawer: JPMORGAN CHASE BANK, N.A.
**NON NEGOTIABLE**

282111107 NEW 01/08 8810004308

---

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK    **CASHIER'S CHECK**    HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CHASE ◯**        9807027289    25-3
                                 440
Date    04/05/2018    Void after 7 years

Remitter:    MOLINA LAW P.C.

Pay To The
Order Of:    ALBERT H. BARKEY, ESQ., AS ATTORNEY

Pay:    TWO HUNDRED FORTY THOUSAND
        DOLLARS AND 00 CENTS                    $** 240,000.00 **

Drawer: JPMORGAN CHASE BANK, N.A.

Do not write outside this box

Memo:
Note: For information only. Comment has no effect on bank's payment.

Ryan A. Crowley, Managing Director
JPMorgan Chase Bank, N.A.
Columbus, OH

⑈9807027289⑈ ⑆044000037⑈ 758661433⑈